IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARY GREGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 12313 |
| | ) | |
| SYNGENTA SEEDS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

While Gary Gregg was employed by Syngenta Seeds, LLC, he joined the U.S. Army National Guard. He took several leaves from Syngenta to serve in the military. Gregg contends that as a result of his military leaves, Syngenta transferred him to a position with fewer responsibilities and ultimately terminated him, violating the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301–35. Syngenta has moved to dismiss Gregg's claims alleging violations of 38 U.S.C. §§ 4312–13 (failure to reemploy) and 4316 (denial of the rights and benefits of employment), counts two and three of Gregg's complaint. For the reasons stated below, the Court denies Syngenta's motion.

## Background

At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018).

Syngenta Seeds hired Gregg as a Commercial Product Evaluation Manager for

its Agronomy Division in August 2020.  Over the next two years, Syngenta gave Gregg several awards and recognized his positive performance.

In July 2022, Gregg enlisted in the U.S. Army, Ohio National Guard.  He informed Syngenta that he was ordered into active-duty military service from September 2022 to February 2023.  Syngenta initially told Gregg that it would temporarily reassign his duties, but before Gregg's leave began, it permanently reassigned his duties to another member of the Agronomy Division and transferred him to the role of Analyst in the Insights & Analytics group.  Gregg alleges that this reassignment was a demotion to a position with fewer responsibilities.

Gregg returned to work in the Analyst position after this first military leave.  He expressed his concerns to Syngenta that he had been demoted as a result of his military leave, met with the Human Resources Department, and contacted the U.S. Department of Labor.  Gregg alleges that his supervisor manufactured a performance issue as a pretext for his demotion.

After notifying Syngenta, Gregg took leave for a second period of active-duty military service during the month of January 2024.  In February 2024, he informed Syngenta of upcoming active-duty periods in the spring of 2024 and then for twelve to eighteen months beginning in the fall of 2024.  His supervisor responded by email:  "I don't care and support you guys, but this does go against what I've been advised for both you and Ivan from HR.  His leave has thrown me off, and now this.  Is this all standard stuff?"  Compl. ¶ 82.

After notifying Syngenta of the precise date of what would have been his third military leave in May 2024, Syngenta told Gregg that his employment would be

2

terminated at the end of April, the day before his military service began.

When Gregg's military service ended in May 2024, he sought reemployment with Syngenta.  Syngenta refused.

Gregg filed this lawsuit in October 2025.  He alleges that Syngenta took adverse employment actions against him—demotion and termination—that were motivated by his military leave and his complaints to the Department of Labor.  He contends that Syngenta discriminated and retaliated against him in violation of 38 U.S.C. § 4311(a)-(b), failed to reemploy him in violation of 38 U.S.C. §§ 4312–13, and denied him the rights and benefits of employment in violation of 38 U.S.C. § 4316.  Gregg further alleges that Syngenta acted willfully, entitling him to liquidated damages under 38 U.S.C. § 4323.  He seeks a declaratory judgment that Syngenta violated USERRA, economic and non-economic damages, and equitable remedies of reinstatement and recoupment of wages and benefits.

In February 2026, Syngenta moved to dismiss Gregg's claims under sections 4312–13 (count two) and 4316 (count three).  Gregg sought a stay under the Servicemembers Civil Relief Act, 50 U.S.C. § 3932, due to his ongoing deployment to Europe.  The Court granted the motion to stay the case generally but did not stay ruling on the motion to dismiss, to which Gregg had already responded.

## Discussion

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *NewSpin*, 910 F.3d at 299 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the pleading stage, the Court must "accept all well-pleaded facts in the

complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* In ruling on a Rule 12(b)(6) motion to dismiss, a court is limited to assessing the allegations in the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information subject to proper judicial notice. *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025).

"In 1994, Congress passed the Uniformed Services Employee and Reemployment Rights Act (USERRA) with the goal of prohibiting civilian employers from discriminating against employees because of their military service." *White v. United Airlines, Inc.*, 987 F.3d 616, 619 (7th Cir. 2021). "[T]he USERRA is to be liberally construed in favor of those who served their country." *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998); *see also Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (explaining that the Selective Training and Service Act of 1940 should "be liberally construed for the benefit of those who left private life to serve their country in its hour of great need").

Syngenta seeks to dismiss count two, Gregg's claim under sections 4312–13, the provisions of USERRA concerning reemployment rights. Section 4312 provides in relevant part that:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—
>
> (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;
>
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

4

(3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

38 U.S.C. § 4312(a). However, "[a]n employer is not required to reemploy a person under this chapter" in several circumstances, including when "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable[.]" 38 U.S.C. § 4312(d)(1)(A).

Section 4313 describes the position to which "a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed[.]" 38 U.S.C. § 4313. The person is to be reemployed:

(A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform; or

(B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, [or, in the case of a period of service exceeding ninety days, in a position of like seniority, status and pay, the duties of which the person is qualified to perform,] only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

38 U.S.C. § 4313(a)(1); *see also id.* § 4313(a)(2).

The Department of Labor has authority to issue regulations implementing USERRA. 38 U.S.C. § 4331(a); 20 C.F.R. § 1002.4. The Department has adopted a regulation stating that "the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service[,]" which "is known as the escalator position." 20 C.F.R. § 1002.191. "[T]he escalator principle may cause an employee to be reemployed in a higher or lower position, laid off, or even terminated." 20 C.F.R. § 1002.194; *Milhauser v. Minco Prods.,*

5

*Inc.*, 701 F.3d 268, 273 (8th Cir. 2012) (holding that termination may be an escalator position).  "For example, an employer may be excused from reemploying the employee where there has been an intervening reduction in force that would have included that employee."  20 C.F.R. § 1002.139.  This outcome reflects that "USERRA is not a veteran's preference statute" and that "it was not intended to give returning servicemembers special benefits not provided to other employees."  *Milhauser v. Minco Prods., Inc.*, 855 F. Supp. 2d 885, 899 (D. Minn. 2012).

Syngenta also seeks to dismiss count three, Greggs' section 4316 claim.  Section 4316 establishes that

> [a] person who is reemployed under this chapter is entitled to the seniority
> and other rights and benefits determined by seniority that the person had
> on the date of the commencement of service in the uniformed services
> plus the additional seniority and rights and benefits that such person
> would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a).  Sections 4312, 4313, and 4316 work in tandem.  "[Section] 4312 protects only a service person's right to reemployment, which in turn triggers § 4313's guarantee of the appropriate position of employment."  *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 445 (6th Cir. 2008).  "Section 4312 'only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day,' while '§§ 4311 and 4316 operate to protect the employee [against discrimination and denial of benefits] as soon as [he] is reemployed.'"  *Hart v. Fam. Dental Grp., PC*, 645 F.3d 561, 563 (2nd Cir. 2011) (internal citations omitted) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006)).

In count one, Gregg asserts a claim under USERRA's discrimination provision, providing that a returning servicemember "shall not be denied initial employment,

6

reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of" their military service. 38 U.S.C. § 4311(a). Gregg contends that on the basis of his military leaves and his complaint with the Department of Labor, Syngenta retaliated and discriminated against him by demoting him and denying him the reemployment to which he was entitled. Syngenta does not seek to dismiss count one.

In arguing for dismissal of counts two and three, Gregg's reemployment and denial of benefits claims, Syngenta contends that Gregg was reinstated to the proper escalator position after each of his military leaves (which includes termination after his final leave) and was not denied any benefits. First, it argues that Gregg's Analyst position was the escalator position after his first and second leaves because the Manager position had been eliminated prior to his first leave. Second, Syngenta contends that Gregg cannot maintain a USERRA claim regarding his termination because he was terminated prior to taking leave and therefore was not an employee under USERRA at the relevant time. Finally, Syngenta argues that count three, Gregg's claim for rights and benefits under section 4316, must be dismissed because he was not entitled to reemployment as a Manager after any of his three leaves. Syngenta says that count three must also be dismissed because Gregg has failed to state a claim for reemployment in count two.

The issue of the escalator position after Gregg's first and second leaves is the core of these claims. The problem with Syngenta's position is that it assumes the escalator position was the Analyst position to which Gregg was reassigned just before his first military leave. But this disregards the fact that Gregg contends his

reassignment from Manager to Analyst was itself a violation of USERRA. If Gregg

prevails on that contention, then it would be incongruous to nonetheless take the

alleged demotion to Analyst as a *fait accompli* that locks in Analyst as the escalator

position. Syngenta may ultimately prevail on Gregg's initial discrimination claim (count

one), but it is not entitled to dismissal of the other claims based essentially on the

proposition that it *will* prevail.

To put it another way, if the initial transfer to Analyst was discriminatory, then

Gregg likely was entitled to reinstatement in the Manager position after his first leave,

and therefore after his second and third leaves as well, barring other intervening events

that may have changed the escalator position. Indeed, Gregg references the Manager

position in each of the claims Syngenta seeks to dismiss. In count two, Gregg seeks

reinstatement to his former Manager position or an escalator position of commensurate

seniority. Compl. ¶ 157. And in count three, he contends that his military leave

motivated Syngenta to deny him reemployment in an appropriate position with the same

seniority he would have had absent his military service. *Id.* ¶ 186. In other words,

embedded in counts two and three is the contention that the initial transfer was

discriminatory—a claim Syngenta has not moved to dismiss.

At this stage, the Court must view the facts in the light most favorable to Gregg.

This precludes accepting, on a Rule 12(b)(6) motion, Syngenta's contention that "the

facts asserted in Gregg's complaint demonstrate that he *was* properly reinstated and

*was not* denied the benefits due to him upon reinstatement." Mem. in Supp. of Mot. to

Dismiss at 2. The question of the appropriate escalator position is, under these

circumstances, better suited for determination at summary judgment or trial. *See, e.g.,*

*Vahey v. Gen. Motors Co.*, 985 F. Supp. 2d 51, 61 (D.D.C. 2013) (assessing at summary judgment whether a layoff was an employee's escalator position); *see also Milhauser*, 701 F.3d at 272 (affirming denial of motion for judgment as a matter of law resting on jury's finding that escalator position was termination).

Syngenta also raises a legal question that appears to be a matter of first impression:  whether USERRA allows claims by employees who have given notice of an upcoming military leave and face termination before taking that leave.  Syngenta contends, with regard to the portion of count two seeking reemployment after Gregg's last military leave, that Gregg was no longer an "employee" under USERRA because he was terminated before his military leave.

"We begin, as usual, with the statutory text."  *White*, 987 F.3d at 620.  Sections 4312–13 do not state that a person must remain employed to bring a claim against an employer or that, to be actionable, an adverse employment action must occur during or after a military leave.  Rather, Congress broadly defined the terms "employee" and "employer" in USERRA:  "[t]he term 'employee' means any person employed by an employer" and "the term 'employer' means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities[.]"[1]  38 U.S.C. § 4303(3)–(4).  The term "any" signifies an "expansive meaning, that is 'one or some indiscriminately of whatever kind.'"  *Ali v. Fed. Bureau of*

---

[1] Gregg asserts that the Court must accept as true his allegation that "Plaintiff was Defendant's 'employee' as that term is defined by the governing statute(s)."  Resp. to Mot. to Dismiss at 2.  Not so.  Courts should not "accept as true a legal conclusion couched as a factual allegation[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*, 550 U.S. at 555).  As Gregg recognizes, his status as an employee requires interpretation of USERRA and is therefore not a purely factual allegation.

*Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *White*, 987 F.3d at 621 (interpreting section 4313(2) and describing the word "any" as "expansive").

This sweeping statutory language comports with the threefold aims of Congress in enacting USERRA:

(1) to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a). Syngenta's proposed reading of USERRA would undermine these aims. It contends that a service member can bring a claim under USERRA only when an employer takes an adverse employment action during or after a military leave, but not between learning of the leave and its occurrence. Reading the USERRA this way would incentivize employers to end-run its protections by terminating service members in the period between notice and the beginning of a leave. This would run afoul of the Seventh Circuit's instruction to interpret USERRA "in favor of those who served their country." *McGuire*, 152 F.3d at 676.

By contrast, Gregg's reading of the statute comports with the Seventh Circuit and Supreme Court's guidance on interpreting statutes intended to protect veterans from discrimination. *See id.*; *Fishgold*, 328 U.S. at 285. The Department of Labor similarly reads USERRA to permit claims based on adverse employment actions that occur after a service member gives notice of a leave but before the leave occurs. *See* 20 C.F.R. §

10

1002.42(c) (explaining in the context of a layoff with recall rights that reemployment is not appropriate "[i]f the employee is laid off *before* or during service in the uniformed services, and the employer would not have recalled him or her during that period of service" (emphasis added)).  In outlining the "criteria" that an employee must "meet to be eligible under USERRA for reemployment after service[,]" the Department does not confine claims for reemployment to circumstances where an employee was subject to an adverse employment action only after beginning a period of military leave.  *See* 20 C.F.R. § 1002.32.  Although the Department's regulations are not binding but rather persuasive, *see generally Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024), they support Gregg's reading.

Finally, Syngenta contends that count three, Gregg's section 4316 claim, must be dismissed because count two is subject to dismissal.  Syngenta reasons that if Gregg states no claim for reemployment, he cannot state a claim for the rights and benefits that he would be entitled to along with reemployment.  But because the Court has concluded that Gregg has stated a claim in count two, this argument fails.

Syngenta also notes that Gregg's response focuses entirely on his termination and does not address its arguments regarding his first and second leaves.  But as the Court has explained, the discrimination, reemployment, and benefits claims (counts one, two, and three, respectively) are intertwined.  Counts two and three allege that after his first and second leaves, Gregg should have been reinstated to the Manager position from which he contends he was improperly demoted or another comparable role.  Gregg references the allegedly discriminatory demotion from the Manager to

11

Analyst position in counts two and three and has not waived or forfeited his arguments as to his first two military leaves.

## Conclusion

For the reasons stated above, the Court denies the defendant's motion to dismiss counts two and three of the plaintiff's complaint [dkt. 17]. The case remains set for a telephonic status hearing on June 1, 2026 at 9:05 AM, using call-in number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 27, 2026